**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **MONA L. WOOD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:11-0489** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 40 - 433, 1381-1383f. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 14 and 21.) and Plaintiff's Reply. (Document No. 22.)

The Plaintiff, Mona L. Wood (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on November 19, 2007, alleging disability as of October 1, 2006, due to "depression, bipolar, anxiety disorder, post traumatic syndrome, left leg injury and restless leg syndrome, balance problem, and alcoholic and gambling addiction."[1] (Tr. at 10, 133-35, 136-38, 184, ) The claims were denied initially and upon reconsideration. (Tr. at 75-77, 80-82, 91-93, 94-96.) On October 12, 2008, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 97-98.) The hearing was held on March 10, 2010, before the Honorable Geraldine H. Page. (Tr. at 33-65.) By decision dated April 8, 2010, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-27.) The ALJ's decision

---

[1] On her form Disability Report - Appeal, Claimant also alleged panic disorder as a disabling impairment. (Tr. at 216.)

became the final decision of the Commissioner on June 29, 2011, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) On July 20, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2010). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining

physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R.

§§ 404.1520(f), 416.920(f) (2010). The Commissioner must show two things: (1) that the claimant,

considering claimant's age, education, work experience, skills and physical shortcomings, has the

capacity to perform an alternative job, and (2) that this specific job exists in the national economy.

McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow

a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and

416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings

to determine whether the claimant has a medically determinable mental impairment and documents

its findings if the claimant is determined to have such an impairment. Second, the SSA rates and

documents the degree of functional limitation resulting from the impairment according to criteria as

specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (C) *Rating the degree of functional limitation.* (1)Assessment of functional
> limitations is a complex and highly individualized process that requires us to consider
> multiple issues and all relevant evidence to obtain a longitudinal picture of your overall
> degree of functional limitation. We will consider all relevant and available clinical
> signs and laboratory findings, the effects of your symptoms, and how your functioning
> may be affected by factors including, but not limited to, chronic mental disorders,
> structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to
> which your impairment(s) interferes with your ability to function independently,
> appropriately, effectively, and on a sustained basis. Thus, we will consider such factors
> as the quality and level of your overall functional performance, any episodic
> limitations, the amount of supervision or assistance you require, and the settings in
> which you are able to function. See 12.00C through 12.00H of the Listing of
> Impairments in appendix 1 to this subpart for more information about the factors we
> consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the
> degree of your functional limitation: Activities of daily living; social functioning;
> concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the
> Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas
> (activities of daily living, social functioning; and concentration, persistence, or pace),

we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, October 1, 2006. (Tr. at 12, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "post-traumatic stress disorder (PTSD), a bipolar disorder; an anxiety disorder; a history of alcohol dependence; obesity; a history of compound fractures and degenerative changes to the lumbosacral spine; and degenerative changes to the left knee, status post meniscectomy and arthroscopy (July 2008)," which were severe impairments. (Tr. at 13, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for light exertional level work as follows:

> [T]he [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can only occasionally use ramps, climb stairs, kneel, and crawl; she should avoid working around hazardous machinery or at unprotected heights, climbing ladders/ropes/scaffolds, or being on vibrating surfaces; and she is limited to work that involves only occasional interactions with the general public and is simple, routine, repetitive, and unskilled.

(Tr. at 21, Finding No. 5.) At step four, the ALJ found that Claimant could return to her past relevant work as a maid and cook. (Tr. at 25, Finding No. 6.) On this basis, benefits were denied. (Tr. at 27,

Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on December 19, 1962, and was 47 years old at the time of the administrative hearing, March 10, 2010. (Tr. at 22, 38, 133, 136.) Claimant had a college education and was able to communicate in English. (Tr. 39, 40-42, 83, 190.) In the past, she worked as a cook, maid, medical biller, line worker, courier, dishwasher, and van driver. (Tr. at 25, 59, 172-79, 185.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will

summarize it below in relation to Claimant's arguments.

**Mount Regis Center**:

Claimant received inpatient treatment at the Mount Regis Center in Salem, Virginia from May 8, 2006, through May 30, 2006, for Ativan detoxification. (Tr. at 268-88.) She was discharged with diagnoses of alcohol dependence, major depression, and a GAF of 55.[3] (Tr. at 268.)

**Southern Highlands Community Mental Health Center**:

Claimant began outpatient treatment at Southern Highlands on July 10, 2007, and continued treatment through February 1, 2010. (Tr. at 343-70, 418-36, 524-39, 606-16.) Claimant initially was diagnosed on July 17, 2007, by Pamela C. Ramsey, a Physician's Assistant, with Bipolar Disorder NOS and Alcohol Dependence. (Tr. at 362.) Ms. Ramsey assessed a GAF of 50. (Id.) At that time, Ms. Ramsey observed a stable mood; appropriate affect, psychomotor activity, and thought content; that she was alert, oriented, and aware; that her recall memory was intact, as was her attention; her insight and judgment were fair; and her intelligence was average. (Id.) Claimant testified that throughout her treatment, she saw a counselor twice a month, and a psychiatrist once a month. (Tr. at 51.)

On her last visit at Southern Highlands on February 1, 2010, it was noted that she was "doing ok." (Tr. at 607.) On mental status examination, Claimant interacted well and exhibited direct eye contact, a depressed mood and an anxious affect, appropriate speech, reported adequate sleep, baseline energy and appetite, normal stream of thought, appropriate content of thought, good insight and

---

[3] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

judgment, baseline cognitive functioning, good recent and remote memory, was fully oriented, and reported no hallucinations or suicidal or homicidal thoughts or plan. (Id.)

On March 2, 2010, her psychiatrist, Dr. Alina Vrinceanu-Hamm, M.D., completed a form Medical Source Statement of Ability to Do Work-Related Activities (Mental), on which he opined that Claimant had marked limitations in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, perform at a consistent pace, perform activities within a schedule, maintain regular attendance, be punctual, and interact appropriately with the public, supervisors, and co-workers. (Tr. at 601-02.) He assessed moderate limitations in her ability to understand and remember detailed instructions, work with or near others without being distracted by them, and complete a normal workday or workweek. (Tr. at 601.) Finally, he assessed mild limitations in Claimant's ability to remember locations and work-like procedures, make simple work-related decisions, and understand, remember, and carry out simple instructions. (Id.) In support of his opinion, Dr. Hamm stated that Claimant had severe panic and anxiety disorders, as well as psychotic features that increase with her depression. (Tr. at 602.) He did not think that Claimant could manage her benefits due to compulsive behaviors. (Tr. at 603.) Dr. Hamm also stated that during the two years he had treated Claimant, her symptoms had become worse and that there were some periods of decompensation. (Id.) Finally, Dr. Hamm opined that her mental impairments would cause her to be absent from work more than three times a month. (Id.)

**Teresa E. Jarrell, M.S.**:

On March 12, 2008, Ms. Jarrell conducted a mental status examination of Claimant at the request of the West Virginia Disability Determination Service. (Tr. at 373-80.) Ms. Jarrell observed that Claimant was alert and cooperative and seemed to have a serious and motivated attitude. (Tr. at 373.) She reported that she walked to the appointment and that it took her approximately thirty

8

minutes. (Id.) Claimant reported that she suffered from anxiety, panic attacks, an inability to be around others, post-traumatic stress, nightmares, feelings of tiredness all day, bipolar disorder, mood swings, depression, difficulty focusing, addiction issues and OCD, impulsiveness, and restless leg syndrome. (Tr. at 374-75.) Ms. Jarrell reviewed records from Mount Regis Center and a psychological evaluation report dated May 17, 2006. (Tr. at 375.)

On mental status examination, Ms. Jarrell noted that Claimant appeared quite disheveled; was alert, attentive, and cooperative; seemed to have a satisfactorily motivated attitude; related in a polite manner; appeared mildly anxious and depressed; exhibited non-spontaneous speech that was normal in rate and volume; full orientation; a restricted affect; linear thought processes; relevant thought content; auditory and visual hallucinations; mildly deficient judgment; normal immediate memory; severely deficient recent memory; mildly deficient remote memory; moderately deficient concentration; mild psychomotor agitation; and reports of suicidal thoughts but no intent or plan. (Tr. at 377.) Ms. Jarrell diagnosed bipolar 1 disorder, most recent episode mixed, severe, without psychotic features; post-traumatic stress disorder; panic disorder without agoraphobia; alcohol dependence, sustained partial remission; and a history of pathological gambling. (Id.) She opined that Claimant's prognosis was guarded with treatment and poor without treatment. (Tr. at 378.)

Ms. Jarrell opined that Claimant's social functioning was within normal limits and that her persistence and pace were mildly deficient and slow. (Tr. at 378-79.) She summarized Claimant's activities of daily living to have included maintaining personal hygiene, preparing coffee; cleaning a little at a time, doing laundry, watching television, reading, caring for her cat, and spending time out of her apartment by walking. (Tr. at 378.)

**Rosemary L. Smith, Psy.D.**:

On March 25, 2008, Dr. Smith completed a form Psychiatric Review Technique on which she

opined that Claimant's bipolar, anxiety, and addiction disorders resulted in mild limitations in maintaining activities of daily living; moderate limitations in social functioning, concentration, persistence, or pace; and no episodes of decompensation each of extended duration. (Tr. at 381-94.) In reaching her opinion, Dr. Smith reviewed the records from Mt. Regis Center, treatment notes from Southern Highlands dated July 10, 2007, through January 21, 2008, and Ms. Jarrell's mental status evaluation report. (Tr. at 393.)

Dr. Smith also completed a form Mental Residual Functional Capacity Assessment on which she opined that Claimant was moderately limited in her ability to maintain attention and concentration for extended periods of time, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and understand, remember, and carry out detailed instructions. (Tr. at 395-97.) Dr. Smith opined that Claimant retained "the ability to learn and perform simple, unskilled work-like activities in an environment that involves limited contact with others." (Tr. at 397.)

**L. Andrew Steward, Ph.D.**:

Claimant underwent a psychological evaluation by Dr. Steward at the request of her attorney on September 1, 2008. (Tr. at 543-50.) Dr. Steward was provided with the medical records from Mount Regis Center, from Southern Highlands from December 7, 2007, through May 13, 2008, and from Ms. Jarrell. (Tr. at 546-47.) Dr. Steward observed that Claimant was appropriately talkative, established rapport, cried at times during the evaluation, and appeared diligent on test items, which Dr. Steward believed were valid and reliable test results. (Tr. at 543.) Her affect was constricted with some lability and her mood was anxious and dysphoric. (Tr. at 544.) She was oriented in all spheres and all mental and memory functions did not appear seriously impaired. (Id.)

10

Claimant reported that she was nervous much of the time, became nervous around people and crowds, suffered from panic attacks which caused bowel problems, was bothered by children and noise, and suffered from anxiety, depression, panic, OCD, and bipolar disorders. (Id.) She had an emotional breakdown at the age of 32. (Id.) She further reported that she hid her irritability, threw tantrums, was defensive about herself, was violent against people and things, had horrible memory and concentration, and was depressed all the time. (Tr. at 544-45.) Claimant reported suicidal thoughts and several attempts by pills and alcohol, as well as homicidal thoughts. (Tr. at 545.) She stated that she had a sleeping disorder and that her PTSD nightmares kept her from sleeping. (Id.) Her appetite had decreased with a twenty pound weight loss. (Id.) She reported feelings of worthlessness, helplessness, and hopelessness most of the time. (Id.)

Regarding activities, Claimant reported that she spent most of her time doing nothing. (Tr. at 545-46.) She did not have a driver's license, hobbies, or any organizations to which she belonged. (Tr. at 546.) She reads in small doses and lacks interest in people and things. (Id.)

Dr. Steward administered the Beck Anxiety and Depression Inventory exams which indicated severe anxiety and depression. (Tr. at 547-48.) He diagnosed Bipolar I Disorder, most recent episode mixed, severe without psychotic features; panic disorder without agoraphobia; obsessive-compulsive disorder; generalized anxiety disorder; history of alcohol dependence; history of pathological gambling; and assessed a GAF of 45.[4] (Tr. at 549.) He opined that she appeared "permanently and totally disabled from any type of gainful employment currently and readily available [in] the United States economic market on a sustained basis for at least a year or more." (Id.) He further opined that her prognosis was poor, though she was capable of managing her own funds. (Id.)

---

[4] A GAF of 41-50 indicates that the person has serious symptoms, or serious impairment in social, occupational or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

**Dr. Timothy Saar, Ph.D.**:

On October 16, 2008, Dr. Saar, completed a form Psychiatric Review Technique, on which he opined that Claimant's bipolar and anxiety disorders were non-severe impairments and resulted in only mild limitations in activities of daily living, social functioning, concentration, persistence, or pace, and no episodes of decompensation each of extended duration. (Tr. at 551-64.) Dr. Saar reviewed records from Mount Regis Center, Southern Highlands, and Ms. Jarrell. (Tr. at 563.)

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's RFC for three reasons. (Document No. 15 at 7.) First, Claimant asserts that the ALJ erred in adopting Dr. Rosemary Smith's opinion when assessing the "B" criteria of the Listing of Impairments when she failed to explain her preference for Dr. Smith's opinion. (Id.) Claimant asserts that this error constitutes reversible error. (Id.) Second, Claimant asserts that the ALJ erred in determining a RFC based entirely upon Dr. Smith's opinion and then reviewing the evidence of record. (Id.) Third, and finally, Claimant asserts that the ALJ erred in relying on Dr. Smith's opinion because it was not based on the total evidence of record. (Id.) Claimant states that Dr. Smith reviewed only the results of psychological testing and the detailed RFC of the treating psychiatrist at Southern Highlands but did not have any of the treatment notes. (Id.)

In response, the Commissioner asserts that the ALJ properly assessed Claimant's RFC and stated that her determination was based upon Claimant's significant activities of daily living, her routine and conservative treatment, the state agency RFC assessments that denoted at most moderate mental impairments, and the opinion of Dr. Saar. (Document No. 21 at 9-10.) The Commissioner notes that the ALJ also cited the opinions of Ms. Ramsey and Ms. Jarrell, as well as the treatment notes from Southern Highlands. (Id. at 10.) The Commissioner further asserts that the ALJ independently

12

reviewed the "B" criteria and concluded that Claimant had no marked limitations. (Id.) Accordingly, the Commissioner contends that Claimant's arguments are without merit. (Id.)

In Reply, Claimant agrees with the Commissioner that the ALJ stated the basis for her RFC, but failed to provide any analysis in her decision. (Document No. 22 at 1-2.) She asserts that the ALJ's finding of significant activities of daily living is inconsistent with his acknowledgment that she utilized a care coordinator from Southern Highlands to assist with her medication schedule and personal needs. (Id.)

Claimant next alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing the opinion evidence of record as she did not explain why she rejected contradictory opinions. (Document No. 15 at 7-9.) Claimant asserts that the ALJ erred in rejecting the opinions of Dr. Steward, a one-time examining psychologist who administered a battery of tests in favor of the opinions of Dr. Smith, a non-examining psychologist who did not have the benefit of all of Claimant's mental health records. (Id. at 8.) Claimant further asserts that the ALJ erred in arbitrarily giving greater weight to the opinion of Pamela Ramsey, a physician's assistant who saw Claimant on one occasion in 2007. (Id.) She finally asserts that the ALJ erred in giving no weight to the opinion of Dr. Hamm, Claimant's treating psychiatrist. (Id. at 9.)

In response, the Commissioner asserts that Dr. Steward examined Claimant on one occasion and that his conclusions were inconsistent with his own mental status examination findings. (Document No. 21 at 10.) Additionally, his opinion was inconsistent with the opinions of Ms. Ramsey, Ms. Jarrell, and the clinical records of Southern Highlands. (Id.) For these reasons, the Commissioner asserts that the ALJ properly gave no weight to Dr. Steward's opinion. (Id.) Regarding Dr. Hamm's opinion, the Commissioner notes inconsistencies with his opinion too. (Id. at 10-11.) The day after Dr. Hamm's opinion, wherein he stated that Claimant had not used alcohol in many months, Claimant testified that

13

she still drank beer occasionally. (Id. at 11.) She indicated in 2007, that she started drinking again after she lost her job. (Id.) She attributed her unemployment to drinking and a bad temper, as opposed to anxiety and panic attacks. (Id.) The Commissioner further asserts that neither Dr. Hamm's nor Dr. Steward's opinions provided any support for their opinions as why Claimant is incapable of working, but rather consist mainly of checked boxes. (Id.) The Commissioner notes that Claimant indicated that she suffered long-standing psychological conditions throughout her life and was able to work successfully with the same symptoms. (Id.)

In Reply, Claimant asserts that the Commissioner failed to defend the ALJ's analysis of the opinion evidence and simply repeated the naked assertions. (Document No. 22 at 2.) Regarding Dr. Hamm, the Claimant notes that the ALJ rejected his opinion as being inconsistent with the opinions of Ms. Ramsey and Ms. Jarrell and the clinical records of Southern Highlands. (Id.) The ALJ, however, failed to identify any inconsistency. (Id.) To the extent that the Commissioner provided reasons as to why Dr. Hamm's opinion is not entitled to any weight, his reasons were not found in the ALJ's decision. (Id.)

Claimant further alleges that the Commissioner's decision is not supported by substantial evidence because the Appeals Council failed to evaluate the August 9, 2009, report by Dr. R. U. Riaz she submitted to it, or address the fact that the opinion corroborated the opinions of Drs. Steward and Hamm. (Document No. 15 at 9.) In response, the Commissioner, citing Meyer v. Astrue, 662 F.3d 700 (4tha Cir. 2011), asserts that the Appeals Council was not required to explain why it denied review or make findings concerning Dr. Riaz's opinion. (Document No. 21 at 11-12.)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to address specifically the side effects of her medications on employment as required by 20 C.F.R. § 404.1529(c)(3). (Document No. 15 at 9-10.) In response, the

14

Commissioner asserts that Claimant indicated on multiple occasions in her written statements that she did not experience any side effects from medications. (Document No. 21 at 12.) The ALJ therefore, was not required to address any side effects that Claimant denied experiencing. (Id.) To the extent that Claimant testified about side effects, the Commissioner asserts that her testimony contradicted her written statements and diminished her credibility. (Id.)

In Reply, Claimant first asserts that pursuant to 20 C.F.R. § 404.1529(c)(3), the ALJ was required to address any side effects of medications. (Document NO. 22 at 3.) Second, Claimant asserts that even if Claimant had contradictory statements, the ALJ was required to resolve any apparent inconsistencies. (Id.) Third, and finally, Claimant asserts that because she is mentally ill it is reasonable for her to have some inconsistencies in the record. (Id.)

1. RFC Assessment.

Claimant first alleges that the ALJ erred in assessing her RFC, primarily because she essentially adopted Dr. Smith's opinion. (Document No. 15 at 7-9.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2010). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and

mental activity that the claimant can perform in a work setting, after giving appropriate consideration

to all of her impairments." <u>Ostronski v. Chater</u>, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the

Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including
> opinions, on the nature and severity of your impairment(s). Although we consider
> opinions from medical sources on issues such as whether your impairment(s) meets or
> equals the requirements of any impairment(s) in the Listing of Impairments in appendix
> 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the
> application of vocational factors, the final responsibility for deciding these issues is
> reserved to the Commissioner.

<u>See</u> 20 C.F.R. § 416.927(e)(2) (2008).

> In determining what a claimant can do despite his limitations, the SSA must consider
> the entire record, including all relevant medical and nonmedical evidence, such as a
> claimant's own statement of what he or she is able or unable to do. That is, the SSA
> need not accept only physicians' opinions. In fact, if conflicting medical evidence is
> present, the SSA has the responsibility of resolving the conflict.

<u>Diaz v. Chater</u>, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in

the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather,

they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and  416.927(e).

For that reason, the Regulations make clear that "[w]e will not give any special significance to the

source of an opinion on issues reserved to the Commissioner. . . ." <u>Id.</u> §§ 404.1527(e)(3) and

416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge

hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests

with the Administrative Law Judge or Appeals Council." <u>See</u> 20 C.F.R. §§ 404.1545 and 416.946

(2008). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d)

when evaluating the opinions of medical sources on issues reserved to the Commissioner. <u>See</u> Social

Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

In her decision, the ALJ concluded at step three of the sequential analysis, in determining the "paragraph B" criteria, that Claimant's mental impairments resulted in mild limitations in activities of daily living; moderate limitations in social functioning, concentration, persistence, or pace; and no episodes of decompensation, each of extended duration. (Tr at 19-20.) In reaching these conclusions, the ALJ relied on Claimant's statements as set forth in her form Function Reports, dated July 7, 2007, and May 23, 2008. (Tr. at 19-20, 161-69, 222-30.) It is clear from her decision that the ALJ independently reviewed the record evidence in assessing the "B" criteria and in determining the appropriate limitations. To the extent that the ALJ may have relied on Dr. Smith's opinion, the ALJ later stated that her RFC assessment was supported in part by Dr. Smith's opinion. (Tr. at 25.) The Court therefore, finds no error in the ALJ's assessment of the "paragraph B" criteria at step three of the sequential analysis.

The ALJ then proceeded to conclude that Claimant retained the RFC for light work with

postural and environmental limitations, and limited her to work with only occasional interactions with

the general public and that is simple, routine, repetitive, and unskilled. (Tr. at 21.) The ALJ stated that

her RFC assessment was supported as follows:

> [B]y the [C]laimant's significant activities of daily living (including independent
> management of her own household and attempts to work after her alleged disability
> onset date); her routine and conservative treatment; DDS physical residual functional
> capacity determinations of a limited range of work at the medium exertional level
> (Exhibits 11F and 24F); DDS mental residual functional capacity determinations for
> moderate impairment (Exhibit 9F) and non-severe impairment (Exhibit 23F); and the
> opinions of physician's assistant Ramsey (Exhibit 6F), psychologist Jarrell (Exhibit
> 8F), and the Southern Highlands (Exhibit 29F, p.2).

(Tr. at 25.)

Claimant alleges that the ALJ assessed a RFC based entirely on Dr. Smith's opinion and then

reviewed the evidence of record. (Document No. 15 at 7.) The Court finds no basis for such a claim.

The ALJ's decision reveals that she reviewed Claimant's testimony, the medical evidence of record,

and the opinion evidence of record, and then assessed a RFC based on her assessment of all the

evidence. (Tr. at 21-25.) In addition to Dr. Smith's opinion, the ALJ reviewed the records and opinions

from Physician's Assistant Ms. Ramsey, Ms. Jarrell, Southern Highlands, Dr. Steward, and Dr. Hamm.

(Tr. at 24-25.) Thus, the Court finds no basis for Claimant's allegation.

Claimant further alleges that the ALJ erred in relying on Dr. Smith's opinion because she did

not review the majority of treatment notes from Southern Highlands, the results of psychological

testing, and the RFC of Dr. Hamm. (Document No. 15 at 7.) Claimant correctly notes that Dr. Smith

reviewed only treatment notes from Mount Regis Center, treatment notes from Southern Highlands

from July 10, 2007, through January 21, 2008, and the evaluation by Ms. Jarrell. (Tr. at 393.)

Nevertheless, the ALJ reviewed all the evidence and had to consider Dr. Smith's and each other

medical source's opinion consistent with the evidence through which it was rendered. Thus, although

18

Dr. Smith did not review the psychological testing, the ALJ did. None of the medical sources reviewed Dr. Steward's psychological testing and opinion, but the others did review the various portions of the treatment notes from Southern Highlands as well as Dr. Hamm's opinion. Accordingly, the Court finds that the ALJ did not commit any error in relying on Dr. Smith's opinion.

2. Opinion Evidence.

Claimant next alleges that the ALJ erred in assessing the opinion evidence of record, particularly in according little weight to the opinion of Dr. Steward. (Document No. 15 at 7-9.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2010). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the

19

evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2010). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The ALJ accorded Dr. Steward's opinion no weight because (1) he saw Claimant only once for a consultative evaluation; (2) his conclusions were inconsistent with his own mental status examination as the ALJ had summarized; and (3) his opinion was inconsistent with physician's assistant Ms. Ramsey's findings, Ms. Jarrell's evaluation, and the clinical records of Southern Highlands. (Tr. at 25.) Claimant alleges that the ALJ arrived "at this bizarre conclusion by cherry picking 'positive statements'... and then apparently concluded that those positive findings contraindicated disability." (Document No. 15 at 8.) First, Claimant asserts that it was error for the ALJ to discredit Dr. Steward for having examined Claimant on only one occasion for the opinions of Ms. Ramsey and Ms. Jarrell who also examined Claimant on only one occasion. Claimant correctly notes that Dr. Steward, Ms. Ramsey, and Ms. Jarrell each examined Claimant on only one occasion. Though the ALJ rejected Dr. Steward's opinion in part for this reason in favor of Ms. Ramsey and Ms. Jarrell's findings and opinion, it is clear that it is the culmination of their opinions leaning toward the same outcome, consistent with the other substantial evidence of record, which the ALJ adopted, that caused the ALJ to adopt their opinions over Dr. Steward's despite this similarity. The Court finds no error on this basis.

Second, Claimant asserts that it was error for the ALJ to favor Ms. Ramsey's findings over Dr. Steward's opinion because she was merely a physician's assistant, and not an acceptable medical source. (Document No. 15 at 8.) Claimant is correct that a physician's assistant is not considered an acceptable medical source under the Regulations. See 20 C.F.R. §§ 404.1513(a); 416.913(a) (2010). Nevertheless, as stated above, it is about consistency. Ms. Ramsey's findings were consistent with and supported by the overall evidence of record and Dr. Steward's were not. See 20 C.F.R. §§ 404.1527, 416.927 (2010). Furthermore, Ms. Jarrell was an acceptable medical source. The Court finds no error on this basis.

Third, Claimant asserts that it was error for the ALJ to state that Dr. Steward's opinions were inconsistent with his own mental status examination and then fail to identify the inconsistencies. (Document No. 15 at 8-9.) Citing <u>Mauzy v. Astrue</u>, 2010 WL 1369107, *16-17 (N.D. W.Va. Mar. 30, 2010), Claimant asserts that the ALJ was required to identify those portions of his examination that were inconsistent with his opinion. (<u>Id.</u> at 9.) The Court agrees that the ALJ should identify specifically any perceived inconsistencies. Nevertheless, the ALJ specifically stated: "his conclusions are inconsistent with his own mental status examination (see above)." (Tr. at 25.) Preceding the ALJ's statement, she summarized Dr. Steward's mental status examination findings to have included near normal findings. (Tr. at 24-25.) The ALJ summarized Dr. Steward's findings of full orientation, an absence of hallucinations or delusions, some paranoia, and a lack of serious impairment in essentially all other mental functioning. (Tr. at 24.) The ALJ then noted, however, that Dr. Steward opined that Claimant was permanently and totally disabled from gainful employment. (<u>Id.</u>) Her words leading to that phrase were: "But he opined." (<u>Id.</u>) The ALJ further noted Dr. Steward's assessed marked limitations. (Tr. at 25.) Thus, it is clear that the inconsistencies to which the ALJ referred were the essentially "normal" examination findings which were contradictory to Dr. Steward's opinion of disability. Given the proximity of the ALJ's summary of Dr. Steward's examination findings and his opinions, the Court finds that the ALJ did not err in referring to "see above" for her perceived inconsistencies and that her assessment of Dr. Steward's opinion is supported by substantial evidence. The Court therefore, finds no basis in Claimant's allegation.

Finally, Claimant alleges that the ALJ erred in giving no weight to the opinion of Dr. Hamm, Claimant's treating psychiatrist. (Document No. 15 at 9.) The ALJ gave slight weight to Dr. Hamm's opinion because it was inconsistent with Ms. Ramsey's findings, Ms. Jarrell's evaluation and opinion, and the clinical records of Southern Highlands. (Tr. at 25.) On March 2, 2010, Dr. Hamm assessed a

22

range of mild to marked limitations in Claimant's mental functional abilities. (Tr. at 25, 601-02.) However, on February 1, 2010, a month prior to Dr. Hamm's opinion, treatment notes from Southern Highlands indicated that Claimant was doing well and interacted well. (Tr. at 24, 607.) As summarized earlier, although Claimant had a depressed mood and an anxious affect, she reported adequate sleep, appetite, and energy; she had no suicidal or homicidal ideation; and she had good insight, judgment, and memory. (Id.) She did not have any negative findings on examination. Yet, Dr. Hamm assessed several marked limitations one month later after having reported that she was doing ok with essentially normal examination findings. Ms. Ramsey's findings and Ms. Jarrell's evaluation and opinion are consistent with the notes from Southern Highlands. Accordingly, the Court finds that the ALJ's reasoning for discounting Dr. Hamm's opinion is supported by the substantial evidence of record.

3. Appeals Council Evidence.

Next, Claimant alleges that the Appeals Council failed to evaluate Dr. Riaz's August 9, 2009, report or to address the fact that Dr. Riaz's opinion corroborated the opinions of Drs. Steward and Hamm. (Document No. 15 at 9.) The Court initially considered Claimant's argument as one alleging that the Appeals Council failed to articulate its reasoning for denying review with respect to Dr. Riaz's opinion. It appears that the Commissioner construed Claimant's argument to be the same. Nevertheless, upon a further review of Claimant's argument and a review of the record, it appears that Claimant alleges that the Appeals Council failed to consider Dr. Riaz's opinion at all.

Claimant submitted to the Appeals Council on April 12, 2010, a psychological evaluation of Dr. Riaz, a board certified psychiatrist, dated August 19, 2009. (Tr. at 66-70.) Dr. Riaz opined that Claimant "has a combination of emotional and physical problems which make her incapable of gainful employment." (Tr. at 70.) Claimant asserts that Dr. Riaz's opinion corroborates the opinions of Drs. Steward and Hamm, and therefore, the ALJ should have evaluated or addressed the opinion.

23

(Document No. 15 at 9.) This opinion was submitted by Claimant to the Appeals Council only four days after the ALJ issued her decision and two months prior to requesting formal review of the ALJ's decision. Claimant filed her Request for Review of the ALJ's Decision on June 8, 2010 (Tr. at 131-32.), which was followed y Claimant's counsel's letter to the Appeals Council on June 14, 2010. (Tr. at 249-67.) The Order of the Appeals Council, dated June 29, 2011, indicates that the only additional evidence considered by the Appeals Council, which was made a part of the record, was Claimant's Request for Review and Claimant's counsel's letter dated June 14, 2010. (Tr. at 5.) Though Claimant may have submitted Dr. Riaz's opinion out of sync, in that it was submitted prior to seeking formal review of the ALJ's decision, it does not appear that the opinion was considered by the Appeals Council, but should have been, as it was included as part of the Administrative Transcript. (Tr at 66-70.)

In deciding whether to grant review, the Appeals Council "must consider evidence submitted with the request for review . . . 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" Wilkins v. Secretary, 953 F.2d 93, 95-96 (4th Cir. 1991)(*en banc*)(citations omitted). Evidence is "new" if it is not duplicative or cumulative. See id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id.  It is clear that Dr. Riaz's opinion is new because it is neither cumulative nor duplicative. The opinion is material as it lends support to the opinions of Drs. Steward and Hamm that Claimant may suffer from mental impairments that render her disabled. As discussed above, consistency and support from the record is instrumental in this case and Dr. Riaz's opinion lends support to the opinions of Drs. Steward and Hamm and to the finding that Claimant may be disabled. Finally, the opinion is dated August 9, 2009, and therefore, relates to the period on or before the ALJ's

decision.[5] Accordingly, the Court finds that this matter must be remanded to the Appeals Council for consideration of Dr. Riaz's opinion.

4. Medication Side Effects.

Finally, Claimant alleges that the ALJ erred in failing to address specifically the side effects of her medications on her ability to work as required by 20 C.F.R. § 404.1529(c)(3). (Document No. 15 at 9-10.) In assessing a claimant's credibility, the Commissioner must consider "[t]he type, dosage, effectiveness, and side effects of any medication" a claimant takes to alleviate her pain or other symptoms. See 20 C.F.R. §§ 404.1529(c)(3)(iv) and 416.929(c)(3)(iv) (2010). In her decision, the ALJ specifically noted Claimant's testimony as to her alleged side effects from her medications. (Tr. at 22.) These side effects included: "feeling drugged, trouble with concentration and focus, and excess sleep." (Id.) The ALJ considered these side effects, as well as all the other factors in assessing her credibility and concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent" with the ALJ's assessed RFC.

_____

[5] The Court notes that Claimant would not meet the requirements of *Borders* should Dr. Riaz's opinion have been submitted to the Court for the first time as new evidence. This is because Claimant has not presented good cause for her failure to submit the evidence to the ALJ. In this case however, Claimant did submit the evidence to the Appeals Council, but for some reason, it was not considered by the Appeals Council. The fact that it was submitted by counsel prior to Claimant's filing of a formal request for review of the ALJ's decision and not with counsel's letter following the request, should not be reason enough to deprive Claimant of her right to review of material evidence.

To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). In *Borders*, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence. *Id.*

(Tr. at 23.) Claimant asserts that although the ALJ recounted Claimant's testimony, she failed to address specifically the side effects on employment. (Document No. 15 at 10.) The Court finds that the ALJ properly considered the side effects of Claimant's medications. Though Claimant testified as to having experienced side effects, she reported on multiple forms that she experienced no side effects. (Tr. at 218, 232-34, 267.) The ALJ referenced her forms on multiple occasions and stated that she considered all the evidence of record. The Court notes that medication side effects were not a major issue addressed by the opinion evidence, and there were no assessed limitations resulting from the side effects. Consequently, the Court finds that the ALJ properly considered Claimant's alleged side effects from her medications and that her decision in this regard is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 14.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Document No. 21.) is **DENIED**, the final decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings and is **DISMISSED** from the active docket of this Court.

The Clerk of this Court is directed to transmit a copy of this Memorandum Opinion to counsel of record.

ENTER: June 6, 2013.

R. Clarke VanDervort
United States Magistrate Judge